LOTTINGER, Judge.
The Plaintiff-appellee is the owner of the Holiday Inn Motel, located in Baton Rouge, Louisiana. The Defendant-appellant is a general contractor who on the 25th day of July, 1958 entered into a written contract with the above owner whereby it was to construct, in accordance with plans and specifications and the other terms and conditions outlined in the contract, a motel on the premises owned by plaintiff in the above city. The supervising architect of this contract was Eldred Blakewood III of Baton Rouge, Louisiana.
The general contractor undertook and completed the construction of the motel and acceptance for the owner was made on February 4, 1959. Under the terms of the contract there was to be a guarantee period of one year from the date of acceptance, which would have ended on February 4, 1960, but same was extended by the contractor until March 4, 1960. This was accepted by the contractor and his liability was in effect under the guarantee clause. During the course of the guarantee period, numerous defects in the construction were noted by the owner and architect and, as a consequence, the Board of Directors of the plaintiff in accordance instructed their manager to inspect the motel thoroughly and make a list of all apparent defects. This was accomplished by the manager and his maintenance man and this list of apparent defects was submitted to Mr. Blakewood, the architect. Mr. Blakewood, using the owner’s list as a guide, then made a thorough inspection of the motel and prepared a list of defects which he found existing and which, in his opinion, came in the guarantee provisions of* the contract against defects in material, workmanship and construction. Some defects as listed by the owner were deleted by the architect on the apparent theory that it did not come under the apparent *854 provisions of the contract. The architect then sent a letter to the general contractor listing all of the defects which he had found, and this letter is dated January 29, 1960, asking that these defects be corrected under the contract. The architect received no reply from the defendant, however the defendant admitted that this letter was received timely and that the general contractor had notice of the defects within the guarantee period. The architect was never advised by the defendant of any objection to the list of defects which he had outlined in his letter, nor was there any compliance to the request for correction of these defects. Due to this refusal by the general contractor to comply with the architect’s decision, it became necessary for plaintiff to file suit against defendant, praying for judgment in an amount sufficient to make the necessary corrections, which claim amounted to $15,-052.00. The defendant filed various and sundry exceptions as a defense to the action brought, but the Lower Court overruled same. The case was then tried on the merits and the transcript involved in this suit consists of eight volumes containing 1859 pages. On August 20, 1963 the Lower Court rendered judgment in favor of plaintiff and against defendant in the full sum of $15,062.00, together with legal interest thereon from date of judicial demand until paid and for all costs of this suit. The defendant has suspen-sively appealed from this judgment and the plaintiff has neither appealed nor filed an answer to same.
We shall first try to dispose of the exception of no cause of action which the defendant has filed to this suit. They have filed two exceptions on two differr ent occasions but the complaint and the grounds of exceptions of no cause of action is predicated on the fact that the specifications and general conditions of the contract sued upon, require that any dispute be referred to arbitration prior to the institution of this suit, and as a result thereof the Lower Court had no jurisdiction. As stated supra the Lower Court overruled these exceptions and tried the case on the merits.
To have a better understanding of the contract, it is necessary that we quote herein certain pertinent portions of said contract. Article 48 of the contract provides as follows:
“ART. 48 GUARANTEE OF WORK:
“Except as otherwise specified all work shall be guaranteed by the contractor against defects resulting from the use of inferior materials, equipment or workmanship for one year from the date of the recorded acceptance of the contract, or from full occupancy of the building by the Owner, whichever is earlier.
"If, within any guaranteed period, repairs or changes are required in connection with guaranteed work, which, in the opinion of the Architect is rendered necessary as the result of the we of materials, equipment or work-menship which are inferior, defective, or not in accordance zvith the terms of the contract, the Contractor shall, promptly upon receipt of notice from-the Ozvner, and wiihoitt expense to-the Owner:
“1. Place in satisfactory condition in. every particular all of such guaranteed work, correct all defects therein, and
“2. Make good all damage to the building or site, or equipment or contents thereof, which, in the opinion of the Architect, is the result of the use-of materials, equipment or workmen-ship which are inferior, defective, or not in accordance with the terms of the contract; and
“3. Make good any work or materials, or the equipment or contents of said building or site disturbed in fulfilling: any such guarantee.
*855 "In any case where in fulfilling the requirements of the contract or of any guarantee, embranced in or required thereby, the Contractor disturbs any work guaranteed under another contract, he shall restore such disturbed work to a condition satisfactory to the Architect and guarantee such restored work to the same extent as it was guaranteed under such other contract.
"7/ the Contractor, after notice, fails to proceed promptly to comply with the terms of the guarantee, the Owner may have the defects corrected and the Contractor and his Surety shall he liable for all expense incurred.
“All special guarantees applicable to definite parts of the work that may be stipulated in the specifications or other papers forming a part of the contract shall be subject to the terms of this paragraph during the first year of the life of such special guarantee. Wherever the Specifications require guarantees extending beyond the period of time above specified, such guarantees shall be provided and maintained by the Contractor for the period thus stipulated, in strict accordance with all terms and conditions hereinbefore set forth.” (Emphasis ours).
In addition to the above, the contract provides on Page VII as follows:

“General Conditions

“The General Conditions of the American Institute of Architects, 6th Edition, are hereby made a part of these specifications by reference and shall bind all parties to the contract as fully as if printed and bound herein.
“The aforementioned documents thoroughly explain the relationship between the Architects, Owner and Contractor, and both Owner and Contractor should familiarize themselves with same. A copy of the aforementioned General Conditions are on file at the office of the Architects, and may be examined there.
“Where any Article of the aforementioned General Conditions is supplemented by the various sections of these specifications, only such specific Articles shall be deemed to be affected, and the balance shall remain in full force and effect.”
The pertinent parts of the conditions of the A.I.A. made a part of the contract are as follows:
“Art. 20. Correction of Work After 'Final Payment. — Neither the final certificate nor payment nor any provision in the Contract Documents shall relieve the Contractor of responsibility for faulty materials or workmanship and, unless otherwise specified, he shall remedy any defects due thereto and pay for any damage to other work resulting therefrom, which shall appear within a period of one year from the date of substantial completion. The Owner shall give notice of observed defects with reasonable promptness. All questions arising under this article shall be decided by the Architect subject to arbitration." (Emphasis ours)
“Art. 38. Architecf s Status. — The Architect shall have general supervision and direction of the work. He is the agent of the Owner only to the extent provided in the Contract Documents and when in special instances he is authorized by the Owner so to act, and in such instances he shall, upon request, show the Contractor written authority. He has authority to stop the work whenever such stoppage may be necessary to insure the proper execution of the Contract.
“As the Architect is, in the first instance, the interpreter of the conditions of the Contract and the judgk of its performance, he shall side nei *856 ther with the Owner nor with the Contractor, but shall use his powers under the contract to enforce its faithful performance by both.” (Emphasis ours)
“In case of the termination of the employment of the Architect, the Owner shall appoint a capable and reputable Architect, against whom the Contractor makes no reasonable objection, whose status under the contract shall be that of the former Architect: any dispute in connection with such appointment to be subject to arbitration.
“Art. 39. Architect’s Decisions. — The Architect shall, within a reasonable time, make decisions on all claims of the Owner or Contractor and on all other matters relating to the execution and progress of the work or the interpretation of the Contract Documents.” (Emphasis ours)
“The Architect’s decisions in matters relating to artistic effect, shall be final, if within the terms of the Contract Documents.
“Except as above or as otherwise expressly provided in the Contract Documents, all the Architect’s decisions are subject to arbitration.” (Emphasis ours)
“If, however, the Architect fails to render a decision within ten days after the parties have presented their evidence, either party may then demand arbitration. If the Architect renders a decision after arbitration proceedings have been initiated, such decision may be entered as evidence but shall not disturb or interrupt such proceedings except where such decision is acceptable to the parties concerned.
“Art. 40. Arbitration. — All disputes, claims or questions subject to arbitration under this contract shall be submitted to arbitration in accordance with the provisions, then obtaining, of the Standard Form of Arbitration Procedure of The American Institute of Architects, and this agreement shall be specifically enforceable under the prevailing arbitration law, and judgment upon the award rendered may be entered in the court of the forum, state or federal, having jurisdiction. If is mutually agreed that the decisions of the arbitrators shall be a condition precedent to any right, of the legal action that either party may have against the other.” (Emphasis ours)
“The Contractor shall not cause a delay of the work during any arbitration proceedings, except by agreement with the Owner.
“Notice of the demand for arbitration of a dispute shall be filed in writing with the Architect and the other party to the contract. If the arbitration is an appeal from the Architecfs decision, the demand therefore shall be made within ten days of its receipt; in any other cas« the demand for arbitration shall be made within a reasonable time after the dispute has arisen; in no' case, however, shall the demand be made later than the time of final payment, except as otherwise expressly stipulated in the contract.” (Emphasis ours)
“The arbitrators, if they deem that the case requires it, are authorized to-award to the party whose contention is sustained, such sums as they or a majority of them shall deem proper to compensate him for the time and expense incident to the proceeding and, if the arbitration was demanded without reasonable cause, they may also award damages for delay. The-arbitrators shall fix their own compensation, unless otherwise provided by agreement, and shall assess the costs and charges of the proceedings-upon either or both parties.”
*857 It is defendant’s position that by virtue of the last sentence of the first paragraph of Article 40 that arbitration is a condition precedent to any right of action that the plaintiffs may have in this matter, for since the matter was never arbitrated plaintiff has no right of action in court. It may be well to point out at this stage that neither the plaintiff nor defendant asked for arbitration, but according to the facts hereinabove outlined the plaintiff had submitted a list of corrections to be made to the architect, and the architect in turn had submitted a list of corrections to be made to the defendant herein and that the defendant did not comply with the request to make the corrections, nor did it ask for arbitration or appeal from the decision of the architect.
Now, reading the provisions of the contract as hereinabove quoted, it is our understanding that the architect is somewhat of a judge as to the performance of the contract, that a great deal of responsibility and duty is placed on his shoulders to see that the defendant complies with the contract. As a matter of fact, in Article 38 of A.I.A. provisions as quoted above, the architect is referred to as a judge. Now we must bear well in mind the fact that this contract was accepted by the owner or plaintiff herein and that it was during the one year guarantee period that the plaintiff herein called certain defects to the attention of the architect. So, therefore, in compliance with Article 20 of the general provisions of the contract, even despite the fact that the defendant had been paid and the contract accepted, they still had a right to call to the defendant’s attention and require his efforts to correct whatever defects resulting from faulty material or workmanship that might be found in the building, which they did. It was then that the architect mailed a letter to the defendant outlining all of the defects that he had found during the one year period. Now the defendant contends that according to Article 40 as hereinabove quoted, arbitration is a condition precedent on all claims. According to our interpretation of the contract and specifically according to the third paragraph of Article 40, and we quote:
“Notice of the demand for arbitration of a dispute shall be filed in writing with the Architect and the other party to the contract. If the arbitration is an appeal from the Architect’s decision, the demand therefor shall be made within ten days of its receipt;”
It is our opinion as an interpretation of the contract and of the facts herein that the letter dated January 29, 1960 addressed to the defendant from the architect calling the defendant’s attention to certain defects of the building and calling upon them to make the corrections as therein pointed out was a decision of the architect, and if the defendant was not pleased entirely with or intended not to comply therein, it was its right under the contract, according to the quotation hereinabove, to appeal from the architect’s decision and demand arbitration within ten days from its receipt. This the defendant failed to do and as a result thereof we are of the opinion that they waived their right to arbitration and for said reason we are of the opinion that the Lower Court was correct in refusing to maintain the exceptions. This was a claim subject to arbitration but the defendant waived same.
ON THE MERITS:
As stated hereinabove, this transcript consists of eight volumes and contains 1859 pages. The plaintiff in its petition has specified nine complaints dealing with the Commercial Building of said motel. They have also specified nine complaints relating to the Rental Units, one of said complaints involves forty units, another of said complaints involves sixty-three units and one complaint involves fifty-four units. They have likewise lodged one complaint dealing with the Swimming Pool. They have likewise specified five complaints dealing with Mechanical and Electrical *858 services and devices furnished to plaintiff herein, and one of the five complaints involves ninety-seven rooms or units of said motel, all resulting from the use of inferior materials, equipment or workmanship guaranteed under the provisions of the contract.
The defendant has advanced arguments dealing with the amount and nature of proof necessary for plaintiff to make out a case. Be that as it may, however, we are of the opinion that the plaintiff herein has proven its case by a preponderance of the evidence as to the defects found and the cost of repairing said defects. We are convinced after reading this record that all of the complaints made developed during the first year after the acceptance of the contract and that all result from inferior materials, equipment or workmanship. We are likewise convinced that the plaintiff has proven its case by a preponderance of the evidence. The plaintiff had asked in its petition for a judgment in the amount of $15,052.00 as a result of these defects. This was based on the architect’s estimate for the replacement and repair according to his letter. We have testimony in this record of estimates running over and above this figure which convinces us that the architect was fair and conservative in his estimate.
Defendant has called our attention to the fact that plaintiff in attempting to prove its case actually withdrew item “b” under Rental Units, but be that as it may the Lower Court inadvertently included said figure in the judgment. The architect’s estimate to repair this particular item amounted to $5.00, and for that reason defendant is entitled to a $5.00 credit and the judgment shall be amended accordingly.
The defendant has called our attention to Article 1920 of the LSA-Code of Civil Procedure which provides:
“Unless the judgment provides otherwise, cost shall be paid by the party cast, and may be taxed by rule to show cause.
“Except as otherwise provided by law, the court may render judgment for costs, or any part thereof, against any party as it may consider equitable.”
They are contending and asking for this court to assess a portion of this cost to the plaintiff-appellee herein. The Lower Court as stated hereinabove rendered judgment against the defendant and for costs, and after reading this record we see no reason why this should be changed. This litigation is brought about as a result of the faulty work and material used in this contract by the defendant who waived their rights to arbitration and forced the plaintiff herein to bring this suit. This lengthy record is the result or activity of the defendant herein and it should be charged with the cost of this litigation.
For the reasons hereinabove assigned, the judgment appealed from is affirmed, with the exception that the defendant is to be given a $5.00 credit thereon.
Judgment amended and affirmed.